Dear Dr. Jackson:
This is in response to the request dated October 1, 2008, from the Lake Carmel Subdivision Improvement District ("LCSID") for an Attorney General's opinion regarding several issues, which are discussed in order, below.
I. Purchase of Liability Insurance
The LCSID has requested an opinion as to whether the LCSID needs to purchase directors and officers insurance or general liability insurance to cover the commissioners and the district for their official acts, and if such insurance can be purchased with LCSID funds.
Based upon its implementing legislation, La.R.S. 33:9071, the LCSID is a political subdivision and not a state agency, and its commissioners are public officers of the political subdivision. La.R.S. 42:1441 provides that the State of Louisiana is not liable for any damage caused by a public officer or employee of a political subdivision within the course and scope of his official duties. It further defines political subdivision to include a special district authorized to perform governmental functions, such as the LCSID, which is a special taxing district. Since the State has no obligation to provide liability coverage for political subdivisions, it is the responsibility of the LCSID to provide coverage for itself and its commissioners. *Page 2 
Although the State is not liable for any claims brought against the LCSID, it should be noted that state law does afford the LCSID some protection by way of providing limitations of claims brought against political subdivisions. La.R.S. 9:2792.4 states:
 A. As used in this Section, a "member of a board, commission or authority of a political subdivision" means a person serving as an elected or appointed director, trustee, or member of a board, commission, or authority of a municipality, ward, parish, or special district, board, or commission of the state, including without limitation, a levee district, school board, parish law enforcement district, downtown development district, tourist commission, port commission, publicly owned railroad board or commission, or any other local board, commission, or authority.
 B. A person who serves as a member of a board, commission, or authority of a political subdivision as defined in Subsection A, shall not be individually liable for any act or omission resulting in damage or injury, arising out of the exercise of his judgment in the formation and implementation of policy while acting as a member of a board, commission, or authority of that political subdivision, provided he was acting in good faith and within the scope of his official functions and duties, unless the damage or injury was caused by his willful or wanton misconduct.
La.R.S. 13:5101, et seq., provide additional limitations on suits brought against a political subdivision, including limitations on where the suit may be brought and the types and amounts of recovery that can be had. Although these statutes do place some limitations on recovery against a political subdivision and its officers, they do not furnish total protection, and do not obviate the need for liability insurance.
The authority of a political subdivision to purchase liability insurance is provided by La.R.S. 33:5153, which states that:
 Any political subdivision of this state may make contracts of insurance with any insurance company legally authorized to do business in this state insuring their officers, employees, agents, *Page 3 
and officials, elected, appointed, or hired, under policies of group liability insurance, against any personal liability that may arise as a result of their actions taken within the scope and discharge of their duties as public officers, agents, officials, or employees.
La.R.S. 33:9071 (F) allows the LCSID to collect a parcel fee upon all taxable real property within the district, and the proceeds of said fee are to be used only for the purposes and benefit of the district and in accordance with the plan developed pursuant to La.R.S. 33:9071 (E). Funds obtained from subdivision parcel fees can be used to purchase such liability insurance, as the provision of such insurance is a necessary and reasonable expense associated with the purposes for which the LCSID was created, under La.R.S. 33:9071 (C) and (E)(2)(a). See Opinion Nos. 93-262, 00-483, and 03-0051.
In purchasing such insurance, there are three requirements with which the LCSID must comply:
First, under La.R.S. 33:9071 (E), LCSID must submit a plan, describing the actions it will take in carrying out its purposes. The provision of liability insurance should be included in an amendment to the plan, as a necessary administrative expense.
Second, under La.R.S. 33:9071 (G), the LCSID is required to adopt an annual budget and submit the budget to the governing authority of New Orleans for approval. The cost of the liability insurance must be included in an amended budget, for approval by the governing authority of New Orleans.
Third, as interpreted by Opinion No. 77-1103, the state, its agencies, and political subdivisions, are prohibited by La.Const. Art. VI, Sec. 12 and Art. VII, Sec. 14 (a) from purchasing insurance from a mutual company. The LCSID must be sure that the insurance company from whom it purchases its liability policies is not a mutual company. Such purchase would make the LCSID a shareholder in the insurance company, which is prohibited.
It is the opinion of this office that the LCSID may purchase policies of liability insurance to protect the district and its commissioners from personal liability for acts done by them in the performance of their duties, and that the cost of such insurance may be paid from the proceeds of subdivision parcel fees, subject to the *Page 4 
restrictions stated above. This opinion is in accordance with our previous Opinion Nos. 93-262, 00-483, and 03-0051. With regard to whether the insurance should take the form of an officers' and directors' policy or a general liability policy, that matter should be discussed with the prospective insurers, who can explain the various policies and recommend the necessary coverage.
II. Payment of Legal Fees
The LCSID has asked if it is permissible to use LCSID funds to pay legal fees to possibly stop construction of a leasing/renting of homes project in the immediate area (across the fence) of the Lake Carmel Subdivision.
Because of the limited information provided in your inquiry, it is difficult for this office to render an opinion regarding the permissibility of taking legal action against the offending activity. The following two limitations on taking legal action should be kept in mind: First, the purposes of the LCSID are specified in La.R.S. 33:9071(C) as promoting and encouraging the beautification, security, and overall betterment of the subdivision. Second, the jurisdictional territory of the LCSID is limited to the subdivision itself, the boundaries of which are specified in La.R.S. 33:9071 (B). Any legal action taken by the LCSID must necessarily fall within its defined purposes and would normally be related to activities occurring within the subdivision boundaries. Based solely on the limited information given to date, it appears that employing counsel to prevent the offending activities is not included within the purposes or territorial jurisdiction of the LCSID, and would not be permitted.
However, if the district feels that the offending activities may fall within its defined purposes, and if the district also feels that the offending activities, although occurring outside the subdivision, are unlawfully interfering with the subdivision residents' use of their property, then it would be permissible to schedule an initial consultation with a private attorney, preferably an expert in real estate and zoning regulations, to determine if the district does have a cause of action in its own name against the persons responsible for the offending activity, or if such legal action should instead be taken by individual residents or by the members of the subdivision association. If, on advice of counsel, the district determines that it does have a viable cause of action within its defined purposes and territorial jurisdiction, then it would be appropriate for the district to amend its plan and budget to obtain approval of the governing authority of New Orleans to employ counsel to commence the proposed legal action. *Page 5 
There is an alternative course of action which the district should consider. If the offensive activities taking place on the adjacent properties are violations of the city's zoning ordinances, or of the adjacent subdivision's restrictions, or if they constitute illegal acts, then the City of New Orleans, through its planning commission or the office of the city attorney, should be able to investigate the described situation and take appropriate action. This office would suggest that the offensive actions be brought to the attention of the City of New Orleans, so that the city can determine if it can or will take action against the offending parties.
III. Compliance with Open Meetings Law
The LCSID has asked if it must comply with the Open Meetings Law in holding periodic planning or special meetings with the Commissioners of the Lake Carmel Subdivision.
The LCSID implementing legislation, at La.R.S. 33:9071, contains the following relevant provisions:
Section D (5), in pertinent part, states that,
 (5) . . . The Board shall adopt such rules and regulations as it deems necessary or advisable for conducting its business affairs which rules and regulations relative to public notice and conduct of public meetings shall all conform to the open meeting provisions of La.R.S. 42:4.1, et seq. It shall hold regular meetings and may hold special meetings as shall be provided in the bylaws.
Section D (6) states that,
 (6) A majority of the members of the board shall constitute a quorum for the transaction of business. . . .
The LCSID must hold all of its meetings, regular or special, in accordance with the Open Meetings Law, La.R.S. 42:4.1 et seq., and a majority of the commissioners must be present to constitute a quorum in order to conduct any meeting. Any meeting at which a majority of the commissioners is present, whether such meeting is of the LCSID only or a joint meeting with another body, such as the subdivision commissioners, is a public meeting and must be conducted in accordance with the Open Meetings Law. *Page 6 
I trust that the above has adequately responded to your inquiries. If we may be of further service, please do not hesitate to contact this office.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 Terry F. Hessick
 Assistant Attorney General
 JDC:TFH:jv *Page 7 
OPINION NO. 93-262
Mr. Ronald L. Busby Secretary-Treasurer Sabine Parish Police Jury 400 Courthouse Street Many, Louisiana 71449
RICHARD P. IEYOUB, Attorney General.
Dear Mr. Busby:
You have requested an opinion from our office regarding the liability of a communications district created by the Sabine Parish Police Jury pursuant to R.S. 33:9101 et seq. Specifically, you asked the following questions:
 1. Does the Sabine Parish Communications District fall under the State of Louisiana umbrella of liability? If it does, does the State also cover legal representation for the district and the commissioners?
 2. In the event that this district and similar districts in other parishes are not covered by state liability protection, would they have an affordable means to purchase such coverage when their revenues are limited to a maximum telephone service charge to fund the enhanced emergency 911 service?
R.S. 33:9101 authorizes any parish to create a communications district. Such districts are political and legal subdivisions of the state with the power to sue and be sued in their corporate names, to incur debt and issue bonds. As a political subdivision, the district, and not the state, is ultimately responsible for any liability resulting from its actions or inactions.
R.S. 42:1441 specifically provides that the State of Louisiana shall not be liable for damages caused by a public officer of a political subdivision, and defines political subdivision to include a special district, such as that created by R.S. 33:9101 et seq. Further, Article 12, Section 10(C) of the Louisiana Constitution of 1974, which states in part, "No judgment against the state, a state agency, or political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered", indicates an intent that a judgment rendered against a political subdivision be paid by funds appropriated by that subdivision. *Page 8 
It is the conclusion of this office that the Sabine Parish Communications District is not a state agency, but rather a political subdivision. As such, the State of Louisiana is not responsible or liable for any judgments rendered against the Sabine Parish Communications District.
In response to your second inquiry, It should be noted that although the state is not ultimately liable for any claims brought against the communications district, state law does afford the district some protection by way of providing limitations on claims brought against the district. R.S. 9:2792.4 states,
 "A. As used in this section, a "member of a board, commission or authority of a political subdivision" means a person serving as an elected or appointed director, trustee, or a member of a board, commission, or authority of a municipality, ward, parish, or special district, board, or commission of the state, including without limitation, a levee district, school board, parish law enforcement district, downtown development district, tourist commission, port commission, publicly owned railroad board or commission, or any other local board, commission or authority.
 "B. A person who serves as a member of a board, commission, or authority of a political subdivision as defined in subsection (A) shall be not be individually liable for any act or omission resulting in damage or injury, arising out of the exercise of his judgment in the formation and implementation of policy while acting as member of a board, commission, or authority of that political subdivision, provided he was acting in good faith and within the scope of his official functions and duties, unless the damage or injury was caused by his willful or wanton misconduct."
R.S. 13:5101 et seq provides additional limitations on suits brought against a political subdivision including limitations on where the suit may be brought, R.S. 13:5104, and the types and amounts of recovery that can be had, R.S. 5106.
Finally, R.S. 33:5153 and R.S. 42:1441.2 authorize political subdivisions to obtain general liability insurance for protection of claims brought against officers, agents, employees, etc., of political subdivisions.
As to "an affordable means to purchase such coverage", funds obtained from the service charge could be used, as the purchase of insurance is an expense "necessary to carry out all purposes of the *Page 9 
district" as used in R.S. 33:9106 (7). Your request seems to indicate however, that such funds will be insufficient to purchase liability insurance. In that event, it is suggested that the district seek assistance from the Sabine Parish Police Jury, either by including the district as an insured under the terms of the police jury's liability insurance, or providing the funds necessary to purchase a separate policy for the Communications District.
 Very truly yours,
 RICHARD P. IEYOUB
 Attorney General
 BY: __________________________
 ROY A. MONGRUE JR.
 Assistant Attorney General
 RPI/RAM, Jr./cdw
 wP51:93-262 *Page 10 
APRIL 19 1993
OPINION NUMBER 00-483
54 INSURANCE 90-A2 PUBLIC FUNDS 71 MUNICIPALITY
The Carencro governing authority may provide its Chief of Police a lump sum car allowance provided that the appropriate taxes are withheld or it may reimburse the Chief of Police for the actual mileage traveled in the performance of his public duties provided that adequate documentation is submitted reflecting the miles traveled. The Carencro governing authority may contract for insurance to insure its Chief of Police against any personal liability which may arise in the course and scope of his employment.
Mr. Jimmy Duhon Chief of Police Carencro City Police 121 Andre' Street P.O. Drawer 10 Carencro, Louisiana 70520
RICHARD P. IEYOUB, ATTORNEY GENERAL
Dear Mr. Duhon:
We received your request for an opinion regarding the authority of the Carencro governing authority to reimburse you for the use of your personal vehicle in the performance of your duties as Chief of Police. You also question the authority of the governing authority to insure your vehicle for those times when it is being used in fulfillment of your public duties.
Our office previously opined that a public employee may be reimbursed for travel expenses. The reimbursement may be done as follows. First, the employee may be reimbursed for the actual mileage traveled in performance of his public duties at a mileage rate established by the governing authority. Adequate documentation of the mileage must be submitted to the governing authority. This procedure provides for a true reimbursement of actual expenses. Second, the governing authority may provide you with a lump sum car allowance. However, if this is done, the governing authority must treat the allowance as additional compensation and the appropriate taxes must be withheld. Attorney General Opinion 94-244. If one of these procedures is not utilized by the governing authority, the allowance or reimbursement may violate Article 7, Section 14 of the Louisiana Constitution which prohibits the donation, loan, or pledge of public funds.
La.R.S. 33:5153 provides that any political subdivision of the state may contract for insurance to insure its officers, employees, agents and officials against any personal liability that may arise in the course and scope of their duties as public officers, agents, officials or employees. Thus, the Carencro governing authority may insure you against any personal liability arising from driving a personal vehicle while in the course and scope of your employment as Chief of Police. *Page 11 
In sum, it is our opinion that the Carencro governing authority may provide you with a lump sum car allowance provided that the appropriate taxes are withheld or it may reimburse you for the actual mileage traveled in the performance of your public duties provided that adequate documentation is submitted to the governing authority reflecting the actual miles traveled. It is further our opinion that the governing authority may contract for insurance to insure you against any personal liability that may arise in the course and scope of your employment as Chief of Police.
We trust that this adequately responds to your request. If you have any questions or comments, please do not hesitate to contact our office.
With kindest regards,
 Very truly yours,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 TINA VICARI GRANT
 Assistant Attorney General
 RPI/TVG/crt *Page 12 
JAN 05 2007
OPINION NUMBER 03-0051
54 INSURANCE 71 MUNICIPALITIES
77 OFFICERS — Local and Municipal; Selection, Qualifications Tenure; vacancies
La.R.S. 33:5153
La. Atty. Gen. Op. No. 00-483
According to La.R.S. 33:5153, a political subdivision such as a village may, but is under no obligation, to provide liability insurance coverage to its chief of police, mayor, alderman, or other employees.
Charles E. Mims Chief of Police Dubberly Police Department 1784 Brushwood Dr. Dubberly, LA 71024-2578
RICHARD P. IEYOUB, ATTORNEY GENERAL
Dear Mr. Mims:
You have requested this office to issue an advisory opinion as to whether the village of Dubberly is obligated to supply general liability insurance coverage for the chief of police as well as for the mayor, alderman, and other employee's of the village.
La.R.S. 33:5153 covers the power of municipalities to contract for group liability insurance. It states specifically:
 Any political subdivision of this state may make contracts of insurance with any insurance company legally authorized to do business in this state insuring their officers, employees, agents, and officials, elected, appointed, or hired, under policies of group liability insurance, against any personal liability that may arise as a result of their actions taken within the scope and discharge of their duties as public officers, agents, officials, or employees.
Therefore, according to this statute, a political subdivision such as a village may, but is under no obligation, to provide liability insurance coverage to its chief of police, mayor, alderman, or other employees. No statute stipulates that a political subdivision must provide certain officials and employees with personal liability insurance coverage. Our office has previously held that a city may provide coverage to a chief of police. Please see Atty. Gen. Op. 00-483 (attached).
I trust the above opinion has answered you questions. Should you have any further questions, please contact this office.
 Very truly yours,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY: __________________________
 CHARLES H. BRAUD JR.
 Assistant Attorney General
 RPI/CHB; mjb *Page 13 
APR 11 2003
OPINION NUMBER 00-483
54 INSURANCE
90-A2 PUBLIC FUNDS
71 MUNICIPALITY
The Carencro governing authority may provide its Chief of Police a lump sum car allowance provided that the appropriate taxes are withheld or it may reimburse the Chief of Police for the actual mileage traveled in the performance of his public duties provided that adequate documentation is submitted reflecting the miles traveled. The Carencro governing authority may contract for insurance to insure its Chief of Police against any personal liability which may arise in the course and scope of his employment.
Mr. Jimmy Duhon Chief of Police Carencro City Police 121 Andre' Street P.O. Drawer 10 Carencro, Louisiana 70520
RICHARD P. IEYOUB, Attorney General
Dear Mr. Duhon:
We received your request for an opinion regarding the authority of the Carencro governing authority to reimburse you for the use of your personal vehicle in the performance of your duties as Chief of Police. You also question the authority of the governing authority to insure your vehicle for those times when it is being used in fulfillment of your public duties.
Our office previously opined that a public employee may be reimbursed for travel expenses. The reimbursement may be done as follows. First, the employee may be reimbursed for the actual mileage traveled in performance of his public duties at a mileage rate established by the governing authority. Adequate documentation of the mileage must be submitted to the governing authority. This procedure provides for a true reimbursement of actual expenses. Second, the governing authority may provide you with a lump sum car allowance. However, if this is done, the governing authority must treat the allowance as additional compensation and the appropriate taxes must be withheld. Attorney General Opinion 94-244. If one of these procedures is not utilized by the governing authority, the allowance or reimbursement may violate Article 7, Section 14 of the Louisiana Constitution which prohibits the donation, loan, or pledge of public funds.
La.R.S. 33:5153 provides that any political subdivision of the state may contract for insurance to insure its officers, employees, agents and officials against any personal liability that may arise in the course and scope of their duties as public officers, agents, officials or employees. Thus, the Carencro governing authority may insure you against any personal liability arising from driving a personal vehicle while in the course and scope of your employment as Chief of Police. *Page 14 
In sum, it is our opinion that the Carencro governing authority may provide you with a lump sum car allowance provided that the appropriate taxes are withheld or it may reimburse you for the actual mileage traveled in the performance of your public duties provided that adequate documentation is submitted to the governing authority reflecting the actual miles traveled. It is further our opinion that the governing authority may contract for insurance to insure you against any personal liability that may arise in the course and scope of your employment as Chief of Police.
We trust that this adequately responds to your request. If you have any questions or comments, please do not hesitate to contact our office.
With kindest regards,
 Very truly yours,
 RICHARD P. IEYOUB
 ATTORNEY GENERAL
 BY: __________________________
 TINA VICARI GRANT
 Assistant Attorney General
 RPI/TVG/crt